UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TYRONNE SEABERRY                              CIVIL ACTION

VERSUS                                        NO.  10-4590

DANIEL EDWARDS ET AL.                         SECTION "C" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Tyronne Seaberry, is a prisoner currently incarcerated in the Tangipahoa

Parish Jail in Amite, Louisiana.  He filed this complaint pro se and in forma pauperis

pursuant to 42 U.S.C. § 1983 against Tangipahoa Parish Sheriff Daniel Edwards, Warden

Joyce Jackson, Asst. Warden Brandon Pinion, Stuart Murphy, Nurse Shawn Sweeney

and the Louisiana Department of Corrections ("DOC").  Plaintiff's claims include:

(1) failure to protect him from an attack by other inmates, (2) overcrowding and

(3) inadequate medical care for a broken jaw suffered in the attack.  Record Doc. No. 1

(Complaint at ¶¶ IV and V).

On February 15, 2011, I conducted a telephone conference in this matter.

Participating were plaintiff pro se and Ashley Sandage, counsel for defendants.  Plaintiff

was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179

(5th Cir. 1985), and its progeny.

## THE RECORD

Seaberry testified that he is currently incarcerated in the Tangipahoa Parish Jail based upon a conviction for escape in August 2010 from the Hammond City Jail, where he was being held for transfer to the Tangipahoa Parish Jail based upon warrants for failure to appear in court, together with convictions for burglary and unauthorized entry of an inhabited dwelling.  He said he is serving a five-year prison sentence on his various August 2010 convictions.

Seaberry confirmed that his claims in this case arise from an incident that occurred around May 24, 2010 at the Tangipahoa Parish Jail, when he had not yet been convicted. He testified that it was overcrowded in the jail on that date, which causes "animosity" among the inmates.  Seaberry testified that, on the date of the incident, he was talking with a couple of other inmates, when "we had a disagreement, and I tried to calm them down, and they pursued the issue, and they jumped me, and I ended up getting my jaw broken."  He said the altercation occurred because "when individuals don't like you, they just find a reason to altercate with you.  They just didn't like me."  He identified the other two inmates involved in the attack as Edward Johnson and Algin Robinson.  Seaberry was not sure why they were being held in the jail, although he thought that Johnson was a pretrial detainee and Robinson had already been convicted on a drug charge.

Seaberry said that the other two inmates attacked him after he tried to walk away from their disagreement and attempted to "get a deputy's attention, but they paid no attention." He stated that no deputy is posted inside the tier itself and therefore "there was no . . . possible way this altercation could have been prevented." He said that the attack lasted "at least about ten (10) minutes" and then it took another five (5) minutes before a deputy arrived. Seaberry stated that he had no problems with Johnson or Robinson before this incident. "None whatsoever," he said, "that's what surprised and shocked me." He testified that the attack "was a surprise to me" that he in no way anticipated. Seaberry said the other inmates stopped beating him before the deputy arrived because he did not resist. He said the other inmates hit, punched and kicked him. He stated that, when the deputy arrived five minutes later, he was taken out of the tier where the altercation had occurred, moved to another area and taken to the emergency room shortly thereafter.

Asked to describe the injuries he suffered in the attack, he said his jaw was broken, requiring surgery. He confirmed the reference in his prison medical records, Record Doc. No. 19, that he was taken from the jail to Lallie Kemp Hospital on the same day of the beating, which occurred shortly before midnight.

As to his overcrowding claim, Seaberry said that he was being housed in B-3, a dorm consisting of eight (8) two-man cells, four upstairs and four downstairs, opening

into a "day room," which is where the altercation occurred.  He described the day room as "very small," about ten feet by fifteen feet in area.  He said that, on the day of the incident, there were more than 16 inmates on his tier, including about four more than there was room for in the cells.  He complained that some of the inmates in the dorm did not have a cell assignment, but had to stay in the day room area.  Seaberry said that he and the other two inmates all were assigned to a cell on the day of the altercation.  He could not recall exactly how many inmates were in his dorm that day.

Asked if his allegation in this case is that the overcrowding caused the fight, Seaberry said, "It's a possibility that could . . . a strong possibility."  He said that the fight happened after he and the other two inmates "had a disagreement . . . just one of those things where you're incarcerated, everybody wants to be looked up to and respected, so they prove a point by jumping on people."  He said only one deputy was then assigned to a security "pod."  He described a "pod" as several [perhaps eight (8)] dorm areas that come together in one wing, and the security deputy sits in a windowed booth in the middle of the dorms.  He said the deputy stationed in this central security booth can see into the various dorms "to an extent, there's certain areas in the dorm where the deputy cannot see."  He was not sure of the name of the deputy on duty in the security booth that day.

Seaberry testified that the dorm day room is equipped with a shower and a bathroom and that each cell also has a toilet.  He stated that "lockdown" to go to sleep occurs at about 10:30 p.m., but on the date of the incident the inmates had not yet been locked down for the night.

As to his medical care claim, he complained that an "inmate nurse" was passing out medications, "that's illegal," and that his constitutional rights had been violated.  He acknowledged the accuracy of the notations in his medical records that he was transported from the jail to the hospital on the day of the incident; that his jaw was x-rayed; and that he was scheduled for an oral surgery appointment at Earl K. Long Hospital.  He confirmed that he was taken to the hospital for oral surgery on May 25, 2010, and was later taken back to Lallie Kemp Hospital for follow-up examinations after the surgery on June 2, June 17 and July 12, 2010.  He said that, while he was in the jail between visits to the hospital, he was given Lortab for the pain in his jaw and protein shakes or broth as part of a liquid or soft diet.  He said he took the pain medication for a week or two after the surgery and that he was on the liquid or soft diet for four to six or seven weeks.

Seaberry said he still suffers pain in his jaw and alleged that he will have pain for the rest of his life.  He said that a plate was placed in his jaw during the surgery and it remains in his jaw.  He confirmed the reference in his medical records concerning his

5

July 12, 2010 follow-up examination at the hospital that he was experiencing no fever, swelling or chills at that time and that the surgical incision in his jaw had healed.  He said he is not currently taking any medication for his continuing pain.

Seaberry stated that his complaints about his medical care include that an inmate nurse distributed his Lortab for a week or so, which was "illegal," but he acknowledged that it caused him no actual injury.

On cross-examination, Seaberry denied that he instigated the attack by the other inmates by confronting or approaching them and starting the argument.  He also complained that a nurse was not on duty "at all times" on the tier, but only during the day.  He alleged that a nurse should be on duty at all times.

## ANALYSIS

I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which

relief can be granted.  28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005.  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

8

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

II.     <u>FAILURE TO PROTECT</u>

Construed broadly, Seaberry's allegation that he was attacked by other inmates within the Tangipahoa Jail may assert a claim that prison officials unconstitutionally failed to protect him from harm.  Seaberry was a pretrial detainee at the time of the incident on which he bases this claim.  In <u>Hare v. City of Corinth</u>, 74 F.3d 633, 650 (5th Cir. 1996), the Fifth Circuit stated:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate.   <u>Hamilton v. Lyons</u>, 74 F.3d 99, 104 n.3 (5th Cir. 1996); <u>Hare</u>, 74 F.3d at 650.

Prison officials have a duty to protect inmates from harm or violence by other inmates.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994); <u>Hare</u>, 74 F.3d at 650.  "To establish a failure-to-protect claim, an inmate must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" <u>Pogue v. Bello</u>, 275 F.3d 1079, 2001

10

WL 1467095, at *1 (5th Cir. Oct. 25, 2001) (quoting Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)).  Here, while plaintiff may allege that he was exposed to harm by prison officials' acts or omissions in failing to protect him from an attack by other inmates, he fails to state a claim cognizable as a matter of law under Section 1983.

A convicted prisoner or pretrial detainee may succeed on a claim for damages under 42 U.S.C. § 1983 for failure to protect from harm only if he demonstrates that there has been "deliberate indifference" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Constitution.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Constitution by failing to protect him from attack by another inmate.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).  Thus, plaintiff must show that a risk of

serious harm existed from another inmate to satisfy this prong.  <u>Wilson v. Seiter</u>, 501

U.S. 294, 297 (1991); <u>Rhem v. Marion County Sheriff Dep't</u>, 263 F.3d 164, 2001 WL

803853, at *1 (5th Cir. June 14, 2001).

Further, the plaintiff must establish that the defendant possessed a culpable state

of mind.  <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official

cannot be held liable "unless the official knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." <u>Id.</u> at 834, 837; <u>accord</u> <u>Newton v. Black</u>, 133 F.3d 301, 308 (5th Cir. 1998).

"Mere negligence or a failure to act reasonably is not enough.  The officer must have the

subjective intent to cause harm." <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir.

2003).  If the court finds that one of the components of the test is not met, it need not

address the other component. <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference"
> is a <u>stringent</u> standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action.  <u>Board of the</u>
> <u>County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S.
> 397, 117 S. Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference"
> standard permits courts to separate omissions that "amount to an intentional
> choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citations

omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the

appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than an episodic act or omission as defined in Hare is at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Seaberry fails completely to allege facts sufficient to establish deliberate indifference.

It cannot be concluded that prison officials unconstitutionally exposed plaintiff to a substantial risk of serious harm. Plaintiff's own testimony confirms that neither prison officials nor Seaberry himself had any reason to believe or even suspect that the other inmates, Johnson and Robinson, posed any danger to Seaberry. As Seaberry himself testified, there was no history of prior incidents between him and the other two inmates. Plaintiff testified that the incident occurred suddenly and without warning as a result of a jailhouse argument and that the attack "surprised and shocked me." Nothing about the centralized security booth alignment that Seaberry described in his testimony indicates any deliberate indifference to a serious risk of harm.

Under these circumstances, it cannot be concluded that any act or omission of prison officials knowingly exposed Seaberry to a substantial risk of serious harm or that

they were deliberately indifferent in the constitutional sense.  See Carrothers v. Kelly, 312 F. App'x 600, 602 (5th Cir. 2009) (dismissal of inmate's suit affirmed where defendant prison guard, who was the only officer on the jail tier at the time of an inmate stabbing, radioed for help and left the tier to obtain assistance, and thereby did not act unreasonably); Curbow v. Jackson, 307 F. App'x 828, 829 (5th Cir. 2009) (dismissal as legally frivolous of suit by inmate stabbed and beaten by other inmates during a prison recreation yard riot affirmed, even though defendants were subjectively aware of some risk but acted reasonably in response to it); Black v. Colunga, 656 F. Supp. 625, 637-38 (E.D. Tex. 2009) (inmate's Section 1983 complaint dismissed when defendant corrections officer did not intervene alone in inmate attack); Verrette v. Major, No. 07-cv-0547, 2008 WL 4083032, *3-4 (W.D. La. Aug. 25, 2008) (claim dismissed against armed prison guards who did not intervene immediately in an inmate attack that happened quickly, when they acted with due concern for the security of themselves and the other inmates involved in the incident); Graves v. Webb, No. C-07-361, 2008 WL 1782635, at *1 (S.D. Tex. Apr. 17, 2008) (inmates' claim dismissed where guards left the scene of inmate riot in prison kitchen and returned five minutes later with a riot gun to restore order); Morris v. Ward, No. 4:06-CV-13, 2007 WL 951433, at *1 (W.D. Mich. Mar. 27, 2007) ("The Eighth Amendment does not require a prison guard to intervene in

an assault by one inmate against another inmate when the intervention would place the guard in danger of physical harm.").

In this case, it cannot be concluded that any prison official unconstitutionally exposed plaintiff to a substantial risk of serious harm.  No deliberate indifference in the constitutional sense occurred.  Neither prison officials nor Seaberry himself had any reason to believe or even suspect that the inmates who allegedly attacked him posed a significant risk of danger to Seaberry himself under these particular circumstances. There was no history known to defendants of prior incidents between Seaberry and the other inmates. The incident occurred suddenly and without warning.  As Seaberry testified, prison officials had no reason to suspect that the inmates who attacked him posed any known or anticipated threat to him before the assault, just as he himself had no reason to believe that the inmates posed any threat to him.  Any claim that prison officials violated plaintiff's constitutional rights by failing to protect him from harm in connection with the attack by other inmates must be dismissed.

III.   OVERCROWDING

Seaberry alleges that overcrowding in the jail, specifically, the housing of about 20 inmates in a dorm area designed to hold 16 in eight two-man cells, may have caused the altercation, all of which violated his constitutional rights.  It cannot be concluded,

however, that plaintiff faced a substantial risk of serious harm in the constitutional sense from these temporary conditions.

As to overcrowding, "the mere fact that prisoners are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. . . . '[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.'"  Morrison v. Gusman, No. 10-217, 2010 WL 724173, at *7 (E.D. La. Feb. 22, 2010) (Zainey, J.) (quoting Castillo v. Cameron County, 238 F.3d 339, 354 (5th Cir. 2001)) (citing Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981)) (additional citations omitted).

Seaberry alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.  Seaberry himself and the other two inmates involved in the altercation were assigned to cells.  The altercation that plaintiff described was the result of a sudden, unanticipated argument with no connection to the alleged overcrowding.  He conceded that there had been no prior incidents between him and the other inmates from which any reasonable inference concerning deliberate indifference related to the alleged overcrowding might have been made by prison officials.  Because plaintiff has failed to state a claim of constitutional magnitude concerning the housing of about 20 inmates in an area designed for 16, this claim must be dismissed.

IV.   MEDICAL CARE

Seaberry was a pretrial detainee during the time period about which he complains. He asserts that he received inadequate medical care for the broken jaw he suffered in the attack by other inmates and because an inmate nurse was permitted to distribute Lortab to him for a little more than a week.

Before the Fifth Circuit's decision in Hare, 74 F.3d at 633, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

17

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle, 429 U.S. at 104, will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg, 428 U.S. at 182-83; Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  As discussed

18

above, "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

As in the context of failure to protect from harm by another inmate, an inmate who alleges constitutionally inadequate medical care must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . .  The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard, 114 F.3d at 551(quoting Board of County Comm'rs, 520 U.S. at 410 (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770.  Once again, "'[s]ubjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue.  See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the

20

"deliberate indifference" standard applies and Seaberry must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Even assuming that plaintiff's broken jaw requiring surgery presented a serious medical need for constitutional purposes, Seaberry has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated at the jail.

Seaberry testified that he was taken to the hospital from the jail shortly after the incident.  He received initial treatment, including x-rays, and was scheduled for surgery. He was transported back to the hospital from the jail within a day or so, and his oral surgery was performed.  During his recuperation from the surgery, he received medication and a special soft or liquid diet at the jail, and was transported from the jail back to the hospital for follow-up care and examination on several occasions.  The hospital record of his last examination for the condition in July 2010 indicates that he had at that time reached maximum medical improvement for his broken jaw.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 F. App'x 24, 25 (5th Cir. 2005)) (There were no constitutional violations when plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a prescription for pain medication.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 F. App'x 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Seaberry has alleged slight delay in receiving medical care in that he did not receive the immediate treatment he thought was necessary, and he has expressed

dissatisfaction with the quality or result of his overall treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298.  No such showing can be made in this case in light of the extensive medical care Seaberry has received during his pre-trial incarceration.

Contentions like Seaberry's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v.

Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999)  (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Part of Seaberry's medical care claim is that an inmate nurse was permitted to distribute Lortab to him for a little more than a week, although he admitted that this caused him no actual harm or injury.  "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." Hart v. O'Brien, 127 F.3d 424, 446 (5th Cir. 1997), abrogated in part on other grounds as recognized in Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999); accord Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000).  I am aware of no constitutional or other actionable statutory requirement that prohibits the mere delivery

of prescribed medication by an inmate assigned to do so, and plaintiff has provided no authority or factual allegation from which such a claim might be derived.

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

      New Orleans, Louisiana, this _____28th_____ day of February, 2011.

      JOSEPH C. WILKINSON, JR.
      UNITED STATES MAGISTRATE JUDGE

---

[2]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.